# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DENNIS MUHAMMAD, et al., ) | |
| Plaintiffs, ) | |
| ) | No. 06 CV 6887 |
| v. ) | Judge Blanche M. Manning |
| ) | |
| CHRISTINE OLIVER, et al., ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Husband and wife Dennis and Navena Muhammad own a construction company. Together, they have sued defendant Christine Oliver and two companies she runs. The Muhammads allege that Oliver used them to obtain contracts with the Chicago Housing Authority intended for minority-run companies, and then reneged on promises she had made once she obtained the contracts. The defendants have moved to dismiss on various grounds, including that the Muhammads' claims have already been resolved in state court. For the reasons stated, the motion to dismiss is granted.

## BACKGROUND

The following facts are lifted from the complaint and are deemed to be true. *See County of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 817 (7th Cir. 2006) (on a motion to dismiss, the allegations of the complaint are accepted as being true). The Muhammads are the sole shareholders of Muhammad Ali Community and Economic Development Corporation (or MDC). MDC had a stellar reputation as a minority-owned contractor in Chicago and had done regular business with the city since 1992. Meanwhile, defendant Christine Oliver was president of two companies, the Chicago Dwellings Association (or CDA) and CDA Management. In 2001, Oliver approached the Muhammads about forming a joint venture to bid for contracts with the

Chicago Housing Authority. In order to win CHA contracts under the city's minority utilization ordinance, a contractor must be able to assure the city that a substantial portion of the work will be performed by minorities or women. By forming a joint venture with a company wholly owned by African-Americans, Oliver (who is white) would be able to contend for minority utilization contracts that she could not win on her own.

The parties ultimately agreed to form the joint venture, which they named MDC/CDA Ventures, L.L.C. The joint venture consisted of MDC, which owned 51%, and either CDA or CDA Management, which owned 49%.[1] Also, in a separate agreement CDA agreed to loan MDC $150,000 for MDC's use on projects unrelated to the joint venture. MDC agreed to repay the loan plus interest in quarterly installments over the course of one year.

The joint venture's first attempt to obtain a contract with the CHA succeeded when the CHA awarded it a $5.5 million contract to install air conditioners in housing units for seniors. But despite the joint venture's early success, the relationship between the Muhammads and Oliver quickly soured. According to the complaint, after winning the $5.5 million contract with the CHA, Oliver sought "to prevent Mr. Muhammad and MDC from exercising any significant control" over the installation of the air conditioners, and "to exclude Mr. Muhammad from all

---

[1] The complaint alleges that MDC formed the joint venture with CDA. But the joint venture agreement is internally inconsistent. The agreement itself defines the members as being MDC and CDA Management, and was signed by agents of MDC and CDA Management. *See* Docket No. 11-7 at 5, 6 & 20. But Exhibit A to the joint venture agreement lists the members as being MDC and CDA. *See* Docket No. 22, Exhibit 1. Normally, when the allegations of a complaint are inconsistent with the terms of a written agreement central to the complaint, the written terms prevail, *see Graue Mill Dev. v. Colonial Bank & Trust Co.*, 927 F.2d 986, 991 (7th Cir. 1991), but in this case the written terms themselves are inconsistent. However, whether the joint venture was formed with CDA or CDA Management will not matter to the court's ultimate resolution of the motion to dismiss, so the inconsistencies need not be resolved.

decision-making functions in the Joint Venture." Complaint at ¶ 68. Oliver's tactics included gaining sole control over the joint venture's finances by setting up a checking account that required her signature only, refusing to use the Muhammads' employees on the CHA project and instead hiring her own subcontractors to perform the work, and refusing to meet or talk to Mr. Muhammad. In addition, Oliver caused CDA to call in its $150,000 loan seven months early. Ultimately, the joint venture concluded its work on the CHA project and was paid, but Oliver told Mr. Muhammad that the joint venture had not made any money and therefore had no profits to distribute.

Litigation followed. CDA sued Mr. Muhammad and MDC in state court for breach of the $150,000 loan agreement, and the state court eventually entered judgment against MDC. Meanwhile, MDC responded to CDA's lawsuit by filing a separate suit in state court against CDA and CDA Management. In that suit, MDC alleged that CDA and CDA Management breached the joint venture agreement by refusing to produce to MDC joint venture documents or to allow MDC to review the joint venture's books and records even though the joint venture agreement required it to do so. The complaint also alleged that CDA and CDA Management refused MDC's demands to appoint a liquidating manager to wind up and dissolve the joint venture in accordance with the terms of the joint venture agreement. CDA Management filed a counterclaim (the parties have not described what the counterclaim alleged). Eventually, the state court dismissed CDA after concluding that it was not a party to the joint venture agreement, and later entered an agreed order in which MDC voluntarily dismissed its remaining claims and CDA Management dismissed its counterclaim, all without prejudice "subject to the parties' right to re-file their claims." The parties have not addressed what prompted the voluntary dismissals.

More than one-and-a-half years after its voluntary dismissal, the Muhammads and MDC filed this suit. In their complaint, they set forth claims that: (1) the defendants denied them benefits under a contract based upon their race in violation of 42 U.S.C. § 1981; (2) the defendants committed fraud by inducing MDC into joining the joint venture with promises that it would be an equal partner when in fact the defendants planned to use MDC as a front to win contracts intended for minority contractors, and committed fraud by keeping joint venture profits for themselves; (3) the defendants breached the joint venture agreement by failing to provide MDC with access to joint venture books and records when requested and by keeping all of the joint venture's profits for themselves; (4) the defendants breached their fiduciary duties by failing to allow MDC to inspect the corporate books, by keeping the joint venture profits for themselves, and by cashing checks that were intended for the joint venture rather than the individual defendants; (5) the defendants stole checks belonging to the joint venture rather than the individual defendants; and (6) the defendants badmouthed the Muhammads and MDC, which tortiously interfered with their ability to enter into future contracts with the city and the CHA.

## ANALYSIS

*Motion to Dismiss Standard*

Under Federal Rule of Civil Procedure 12(b)(6), claims should be dismissed only if the complaint's allegations, accepted as true, fail to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). A claim should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001).

*42 U.S.C. § 1981*

The plaintiffs' lone claim under federal law is that the defendants denied them benefits under the joint venture agreement on account of their race, in violation of 42 U.S.C. § 1981. Section § 1981 prohibits racial discrimination in the making and enforcing of contracts. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 393 (7th Cir. 2007). It reads as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

As a threshold matter, the court must first address what parties may assert a claim under § 1981, and against what parties the claim may be leveled. Because the existence of a contract is a prerequisite to a claim under § 1981, claims under § 1981 may be asserted by or against only those who were parties to the contract. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479-80 (2006). The plaintiffs' § 1981 claim is based upon the joint venture agreement, but according to that agreement as well as the allegations of the complaint consistent with that agreement, the only parties to the joint venture agreement were MDC and either CDA or CDA Management. Accordingly, the § 1981 claims either brought by the Muhammads or brought against Oliver must be dismissed because they were not parties to the joint venture agreement.

Remaining is the § 1981 claim asserted by MDC against CDA and CDA Management. However, that too must be dismissed under the doctrine of claim preclusion, or as the defendants refer to it, *res judicata*. The doctrine of claim preclusion is intended to encourage the finality of judgments, and to dissuade repetitive litigation. *See Wilhelm v. Milwaukee*, 325 F.3d 843, 846

(7th Cir. 2003). To that end, the doctrine bars a party from raising a claim that was, or could have been, raised in an earlier proceeding. *See Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007). In order for claim preclusion to apply, three requirements must be satisfied: (1) entry of a final judgment in the previous proceeding; (2) an identity of the cause of action; and (3) an identity of the parties and privies. *Id.*

Under those factors, claim preclusion bars MDC's § 1981 claim. As noted above, MDC filed an earlier case against CDA Management and CDA in state court, alleging damages based upon CDA and CDA Management's performance (or lack thereof) under the joint venture agreement. Therefore, an identity of parties exists because MDC was a named plaintiff while CDA and CDA Management were named defendants in both the state case and the instant case.

An identity of the cause of action also exists. The claims in both cases stem from CDA or CDA Management's performance under the joint venture agreement. Therefore a single group of operative facts gave rise to the claims in each case. *See In re Dollie's Playhouse, Inc.*, 481 F.3d 998, 1001 (7th Cir. 2007) (even if claims are not identical, an identity of cause of action exists as long as the claims involve a single group of operative facts). Although the state litigation did not involve allegations of race discrimination, such a claim could have been brought and would have arisen from the same group of operative facts. *See Garcia v. Village of Mount Prospect*, 360 F.3d 630, 637-38 (7th Cir. 2004) (state court proceeding on pension board's denial of benefits precluded § 1981 claim in federal court that denial was racially motivated, even though no civil right claim was ever raised in the state court proceeding).

Finally, a final judgment was rendered by the state court. Although the judgment included a voluntary dismissal of the parties' claims, the judgment is nevertheless considered

final and gives rise to claim preclusion. *See Hill v. Potter*, 352 F.3d 1142, 1144 (7th Cir. 2003) ("The test for finality is not whether the suit is dismissed with prejudice or without prejudice, on the merits or on a jurisdictional ground or on a procedural ground . . . The test is whether the district court has finished with the case.")

The plaintiffs attempt to escape the effects of *res judicata* by asserting that it is an affirmative defense. Because *res judicata* is an affirmative defense, the plaintiffs argue, it would be premature for the court to address the issue on a motion to dismiss for two reasons: (1) affirmative defenses may not be raised until the defendant has answered, which has not happened yet; and (2) a motion to dismiss must be decided solely on the allegations of the complaint, and the complaint need not anticipate the defendant's affirmative defenses. These arguments against addressing the issue of *res judicata* have been raised in other cases and rejected. *See, e.g., Arthur Anderson LLP v. Fed. Ins. Co.*, No. 06 CV 1824, 2007 WL 844632, at **7-8 (N.D. Ill. Mar. 16, 2007). When the allegations of the complaint and materials of which the court can take judicial notice show that *res judicata* applies, dismissal on that basis is appropriate. *Id.* (when basis for dismissal is *res judicata*, the court may take judicial notice of pleadings and orders in previous litigation between the parties).

Accordingly, the plaintiffs' § 1981 claims against the defendants are dismissed in their entirety.

***State Law Claims***

The remaining claims against the defendants are all state law claims, over which the court, in its discretion, declines to exercise supplemental jurisdiction. *See Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007) (district court has discretion not to

exercise supplemental jurisdiction over state law claims that remain after dismissal of federal claims). None of the factors that would favor retaining jurisdiction compel retention. First, section 1367(c) explicitly tolls the statute of limitations, so dismissal of the state law claims would not jeopardize their timeliness. *Id.* at 907. Second, dismissal would not result in the waste of federal judicial resources because to date the court has had minimal involvement in the case. *Id.* And finally, because of the court's minimal involvement to date, the court cannot conclude that it is "obvious" how the claims should be decided. *Id.*

Accordingly, the remaining state law claims are dismissed. Although dismissal is without prejudice, the court takes no position on whether, if re-filed in state court, these claims would be barred by the doctrine of claim preclusion.

*Motion to Strike*

The plaintiffs have also filed a motion to strike from the defendants' motion to dismiss exhibits that were not attached to the complaint, as well as any argument within the motion that relied upon those exhibits. The only exhibits the court relied upon were the joint venture agreement as well as pleadings and orders from the parties' state court lawsuits. Contracts to which a complaint refers and are central to its allegations may properly be considered on a motion to dismiss, even if not attached to the complaint. *See Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Likewise, the court may take judicial notice of pleadings and orders entered in other cases. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). Accordingly, the plaintiffs have identified no reason for striking these exhibits and therefore the motion to strike is denied.

*Attorneys Fees*

A prevailing defendant in a civil rights suit is entitled to an award of attorneys fees if the plaintiff's claims were "frivolous, unreasonable, or without foundation." *See King v. Ill. St. Bd. of Elections*, 410 F.3d 404, 423 (7th Cir. 2005). The defendants contend that the plaintiffs' claims were "inflammatory and baseless," and therefore they are entitled to an award of fees.

The court, in its discretion, does not believe that an award of fees is appropriate in this case. Because the court has dismissed the § 1981 on the basis of *res judicata* rather than the merits of the underlying claim, the court had no occasion to address the claims' merits or to conclude that they were frivolous or baseless. Accordingly, an award of attorneys fees would be inappropriate. *See Chester v. St. Louis Housing Auth.*, 873 F.2d 207, 209 (8th Cir. 1989) (dismissal on the basis of *res judicata* does not involve the merits or lack thereof of the underlying claim, and therefore attorneys fees under § 1988 are not warranted); *Jones v. Texas Tech. Univ.*, 656 F.2d 1137, 1145-46 (5th Cir. 1981) (same).

**CONCLUSION**

For the reasons stated, the court grants the defendants' motion to dismiss [10-1] in its entirety. The plaintiffs' motion to strike [23-1] is denied. The clerk is directed to terminate this case from the court's docket.

ENTER:

DATE: June 1, 2007

Blanche M. Manning
United States District Judge